There is no dispute on appeal that if sent back to Russia, Mr. Belov would, chances are, be tortured. The distinguishing and disturbing aspect about this case is that the IJ's finding of a specific, individualized fear of torture on the part of Mr. Belov points directly and consistently to the same provenance, the same officials who detained Mr. Belov in 1994 for, of all things, not having enough bullets in his gun, which is either the most ill-conceived gun control law ever or patent pretext, the same officials whom Mr. Belov criticized a month after his illegitimate detention for corruption in general and for their pretextual detention in particular. Kennedy. Counsel, you're very much aware that we don't sit in a de novo review of what went on in the proceedings before the immigration judge or even, for that matter, BIA. What is the specific challenge that you make in terms of the IJ findings? That's what we have to focus on. The IJ and, by extension, the BIA got it wrong in three fundamental respects. The first is the formulation and application of the serious reasons standard. According to the BIA in its decision affirming the IJ's denial of withholding of removal, the reasoning was essentially that it is the very nature of a criminal prosecution that a foreign state, quote, unquote, believes it has evidence to convict the accused. Here, the Petrozavodsk prosecutor's office believes that it has evidence to convict Mr. Belov because it has lodged criminal accusations against him. Therefore, the IJ properly relied on these uncorroborated accusations for its findings. It isn't whether the Russians have serious reasons. It's whether the Americans have serious reasons to believe that the agent committed a serious nonpolitical crime outside the United States. That is absolutely correct. And the BIA essentially omitted that step. Its reasoning was essentially that there are serious reasons to believe that Mr. Belov committed these crimes because Russia has serious reasons to believe that he committed these crimes. Because Russia has gone a little bit farther than harboring serious reasons. They indicted the man. They did. But these indictments, which are set forth in Exhibits 39 and 45, are authored by the very same officials who tortured Mr. Belov in 1995, who have been described as the godfather of Petrozavodsk, who were criticized by Mr. Belov six months before his torture in a published front-page newspaper interview presciently titled A Coincidence, the existence, timing, and content of which are not disputed at all by the government. The BIA's formulation of the serious reasons standard entirely omits the careful evaluation of the reliability, veracity, and foundation of the foreign state's accusations. It becomes dangerously close to establishing a presumption or prima facie deference to the foreign state's accusation. Another aspect of error on appeal is that the BIA, according to the government's own brief, rested its serious reasons finding largely on a negative credibility finding. Now, that doesn't seem to be right. The serious reasons finding should at least initially rest on affirmative evidence that the alien committed a crime, reliable and foundational affirmative evidence. And that simply does not exist here. As we demonstrated in our briefing, the documents that charge Mr. Belov, the authors of those documents, are directly and consistently implicated in his torture. But the adverse credibility finding was made because of inconsistencies in Mr. Belov's own testimony in front of the IJ, were they not? Granted. But in our briefing, we demonstrated point by point that Mr. Belov had a cogent explanation for any of those purported discrepancies, many of which, if not most of which, were the result of misreadings of the record. Including whether he was married to a Russian or not? That was extensively litigated in his Federal trials. And Judge Beyer found that the purported evidence that he was married in, that he was previously married in Russia, was insufficient as a matter of law to support a claim. Does that affect this proceeding? No, it doesn't. The standards are obviously different. However, the trial transcripts are replete with directly relevant evidence that go to the totality of circumstances test in evaluating whether there are in fact serious reasons to rely on the Petrozavodsk charging documents. And as a matter of policy, if in fact any foreign prosecutor's office's charges of foreign criminal activity, even as here, tainted by torture, riddled by unreliability, in third-party media these officials are described as implicated in criminal activity in Petrozavodsk, described as the godfather of Petrozavodsk. Well, what about the asylum interview when he said he was not wanted for murder or arms-dealing or mayhem in Russia? Is that an outright lie? No, it is not. That was an interpretational question. And that was extensively litigated. That was the crux of his Federal trials. He believed that under Russian law ---- You're referring to the Federal trial, but I don't understand how that affects the I.J. proceeding. Well, the testimony from the I.J. from the Federal trials was at least in part presented before the I.J. and it included testimony from the very officials who have ---- who were implicated in his torture and who charged him. And that is why it's relevant. But as I was saying, as a policy matter, if mere charges, accusations that are entirely uncorroborated and also undermined by charges of corruption, torture, illegitimate motives, could compel a denial of withholding or removal, as in this case, that rule would pave the path of a very slippery slope indeed. It would ---- But, counsel, here there is corroboration not only from the charging officials who may have tortured him, probably did torture him, but from Solomonov and from Octavine, his two partners. Those people weren't officers who tortured him, and they corroborated the accusations of murder. I ---- we dispute the fact, the contention that they corroborated the accusations of murder. Solomonov, in fact, testified that Mr. Belov was completely innocent of these charges. And there is ---- there is testimony from the Federal ---- in the Federal trials as well from a colleague of Mr. Belov that he was innocent of these charges. The Petrozavodsk police wiretapped a conversation between Mr. Belov and Mr. Solomonov, and during those conversations, Mr. Belov again maintained his innocence as he has consistently done throughout these proceedings. Is it your position that the findings in the Federal trials in the United States against Mr. Belov for making misstatements to the INS have a collateral estoppel effect? No. They ---- our contention is not that they are controlling or dispositive, but that they are relevant, and that principled scrutiny of those extensive transcripts which include the direct testimony of Mr. Belov's past and would-be torturers who are identical to his accusers should have been considered and are relevant under the totality of circumstances test. And, Your Honors, I would like to reserve my remaining time. You may do so, Counsel. Thank you, Your Honors. We'll hear from the Governor. May it please the Court, Sarah Maloney for the Respondent. Counsel, may I ask you to speak up a little louder, please? The issue is whether the record before the immigration judge compels reversal of the agency's decision that there are serious reasons to believe that Mr. Belov committed a serious crime in Russia. The agency chose to credit the Russian law enforcement documents, which were relied upon by the FBI and by Federal prosecutors here in the United States. And the agency chose not to credit Mr. Belov's claims. The agency's decision is supported by substantial evidence. The record contains overwhelming evidence that Mr. Belov was involved in committing murder and crimes involving firearms in Russia. For example, the record contains Exhibit 45, which is the 1997 charging document issued by Russian law enforcement titled Decree of Proceedings Charging Mr. Belov with Murder and Firearms Offenses. The record also contains Exhibit 39, which is the 1997 arrest warrant issued for Mr. Belov's arrest and arraignment. I don't think you've really met head-on the petitioner's contention that all these documents were created by the same officials who were found by the IJ, right, not to be credible. In other words, he didn't choose to believe. And the BIA's opinion really doesn't answer that question. If you look at the bottom of page 5 of the opinion, the BIA says the respondent asserts that the documents relied on by the IJ are not probative because they were created by the same corrupt officials who seek retaliation against the respondent. And then the next sentence, however, as will be discussed more fully below, the respondent's credibility has been found deficient. But they – but the BIA never answered this question that these documents they rely on were created by the same officials found to be corrupt by the IJ. What's the answer to that? How can these documents be reliable? They're reliable because federal prosecutors here in the United States and FBI officers interviewed these Russian law enforcement officials. They were found to be wrong, weren't they? Well, we don't – It was acquitted here in the United States. We don't know that. A jury did acquit the petitioner of – for having made false statements. So I don't think the fact that the federal prosecutors, you know, relied – mistakenly relied on it helps you too much, does it? Well, they – but they interviewed these officers and they presented them as witnesses at the federal trial. And the federal prosecutors – No, but the IJ – didn't the IJ find that these officials were corrupt, they couldn't be relied on? No, not these particular officials, no. Well, isn't that the gist of his – isn't that the gist of his decision? No, the immigration judge found that the country conditions evidence demonstrated that Petitioner Mr. Beloff, more likely than not, would be tortured while in – And the country conditions were created by these officials. That's what he's referring to. It's the Department of State reports that he relied upon. Well, you don't believe there's a contradiction between the BIA determining that, one, this person would face torture if he's returned to Russia, and, two, that these documents that accuse him of these crimes are trustworthy? Well, the agency – the agency reasonably found, based on the evidence before it, that the documents were reliable, and yet Mr. Beloff's claim that they're fabricated and unreliable was not worthy of belief. And that's based on – Well, what's the basis of finding that he would be tortured, then, which the agency found, right? Well, the immigration judge credited the law enforcement documents that Mr. Beloff would be prosecuted and incarcerated and then determined that he more likely than not faced torture while having – by prison officials once incarcerated. So it didn't reflect upon the prosecutors or the police officers necessarily. And certainly, certainly she didn't – she didn't address these specific officers involved in this case or didn't identify them as torturers. But the record is filled with Mr. Beloff's inconsistent and contradictory statements that provide good reason not to believe his claim that these charges were fabricated. For example, Mr. Beloff attested on his adjustment of status application in 1998 that he had never been arrested or charged with a crime in Russia. And this can be found at the administrative record, page 2526. In contrast, when testifying under oath before an immigration officer, he admitted that he had been arrested once for 24 hours, but he failed to tell the officer about his other more significant arrest and 10-day detention on suspicion of committing serious crimes. And this can be found at the administrative record, page 2499 to 2501. With counsel, let's – following up on what Judge Toshima was saying, here we have a – what's barring withholding of removal is the claim that there's serious questions regarding a crime committed, nonpolitical, in Russia. The Petitioner Beloff says the people who wrote those indictments and charges against me are the same people who tortured me. And they should not be believed. The burden of proof is on the government to show that there are serious questions, that serious reason to believe that these crimes were committed. How can you grant credibility to officials who you admit are waiting to get their hands on Beloff to torture him when they say he committed these crimes for which we want him back? Well, as an initial matter, the burden of proof lies squarely with the – with Mr. Beloff, with the Petitioner, because he's – he's asking for withholding of removal. He's holding – So he bears – he bears the – For withholding of removal – He bears the burden of showing that he's eligible and not barred. He's done a pretty good job of that because he's shown that he's eligible for cat relief. If he's eligible for cat relief, that means that he's going to be tortured when he goes back there, more likely than not. Certainly, the lesser included crime of political persecution is included in torture, one would think. So he's carried his burden of proof on that as far as I can see. Now, you say, but he can't go back because he's – there are serious questions that he committed a crime. And the serious questions he committed a crime are based in large part on documents fabricated by the persons who you admit tortured him. It seems to me that you're taking an inconsistent position. Well, he claims that they're fabricated. And, again, he bears the burden of showing that he is not barred under this – under this mandatory exception for withholding of removal. And the agency reasonably found – But the agency looked at his conflicting statements and reasonably drew the reasonable inference, chose one of them between these conflicting inferences, chose one and found that he was not credible, that he cannot be believed. And under the substantial – As to whether he committed the crimes. As to – as to anything. As to – yes, as to whether he committed the crimes, as to whether the officials made up these charges out of whole cloth. I mean, significantly, one of the – one of the bases the Board relied upon was that Mr. Beloff himself testified before the immigration judge that he knowingly perjured himself before the immigration officer when he repeatedly told her – told her under oath that he had been arrested once. That Mr. Beloff admits that he doesn't take the oath to tell the truth seriously and he's willing to give false testimony provides, you know, one good reason to believe – to disbelieve anything – any claim he offers. There are many more inconsistencies and contradictions. I see that I – that I have a minute left. I could go through them all and we could cite to the record and further demonstrate in addition to our briefs that the agency reasonably relied on these contradictions. But I also wanted to quickly address an argument Petitioner raised in his reply brief for the first time. If he lied so much about withholding, why did you believe him about Kat? The immigration judge made that finding and she premised it based on his situation as a potential convict facing imprisonment in the Russian prison system, which is where the torture would take place. Or more likely than not, the country conditions Evans showed took place. And that's distinct from these – the prosecution. Is that a sort of a permanent decision? Suppose conditions change. Is he liable for removal? He was granted deferral of removal under the regulations implementing the torture convention. And if conditions change, yes, the immigration service may deport him. But are there any pending proceedings of that kind? In other words, so far as this record shows, he will not be removed. He has – he's been – any removal has been deferred under Kat. Yes, deferral of removal still stands based on the immigration judge's decision. Thank you, counsel. Your time has expired. Mr. Tsai, you have some reserve time? I have a question. You won on deferral of removal under Kat. Why are you pushing further withholding of removal? The Kat regulations position deferral of removal and withholding of removal as very distinct types of protection that offer very distinct and different degrees of protection. Deferral of removal can be terminated at any time with only 10 days' notice, at which time the alien, Mr. Belov, would bear the burden of proof to show again that he would be more likely than not tortured, and the I.J. would conduct – review the evidence de novo. In contrast, in signal contrast, withholding of removal can only be terminated with 30 days' notice. The service, the government, would have the burden of proof to show by preponderance of the evidence that, A, there was fraud in the initial application, or, B, that there was a fundamental change of circumstances. But in either case, you can bring a challenge to the removal, can you not, and start the whole process over again? Correct. And that is the same case with asylum. If Mr. Belov were granted asylum, that is also in some sense precarious because that can be terminated as well. Now, just quickly addressing a couple points, the government contended that the I.J.'s torture finding was a mere sort of generalized condemnation of prison abuse in Russia. That's specifically contradicted by the I.J.'s finding that Mr. Belov's fear of torture, and I quote, is individualized and does not result from the general conditions of violence affecting prisoners in Russia. Number two, I did not hear the government say, because I believe the government cannot say or assure this Court,  of the foreign state's charges as they are mandated to do under the probable cause standard. And finally, just to sum up, the purported substantial evidence supporting the I.J.'s denial of withholding or removal is neither substantial nor in some sense evidence. It consists entirely of wholly uncorroborated and demonstrably unreliable accusations of Mr. Belov's past and would-be torturers. This Court should not be the first in the decisional law to hold that serious reasons for withholding, denying withholding of removal, obtain, whereas here those purported reasons are inextricably tied to the very same governmental apparatus. Thank you, Counsel. Your time has expired, Counsel. Thank you. The case just argued will be submitted for decision.
judges: Bennett, O'scannlain, Tashima